# IN THE COURT OF APPEALS OF IOWA

No. 16-1072
Filed March 8, 2017

**VICTOR LAWRENCE PELLETIER,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Scott County, Henry W. Latham II, Judge.

Petitioner appeals from the denial of his application for postconviction relief. **AFFIRMED.**

Thomas J. O'Flaherty of O'Flaherty Law Firm, Bettendorf, for appellant.

Thomas J. Miller, Attorney General, and Kristin Guddall (until withdrawal) and Kevin Cmelik, Assistant Attorneys General, for appellee State.

Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

This appeal arises from a postconviction-relief proceeding in which Victor Pelletier challenged his conviction for sexual abuse in the third degree. The offense conduct was set forth in our opinion resolving Pelletier's direct appeal:

> Pelletier was charged with sexual abuse based on allegations he put his mouth on the penis of C.H., the twelve-year-old neighbor he was babysitting while C.H.'s mother was away overnight. Another neighbor, Doug Peiffer, testified he was at home around 5:30 a.m. on a cold winter morning when he heard C.H. pounding on the door while screaming, "He's raping me. He's raping me." When Doug opened the door, a hysterical C.H. darted into the house. C.H. was carrying his coat and shoes and wearing one sock. Doug called the victim's mother, who called the police. Officer Thompson arrived, talked with C.H., and testified to C.H.'s demeanor—being in shock.
>
> Kathleen Wiseman, Doug's mother, testified she was sleeping and was awakened by C.H. banging on the door. Further, C.H. "came running in and crying, 'That man raped me. That man raped me.'"
>
> Later that morning, Officer Crouch interviewed Pelletier at the police station. Officer Crouch testified Pelletier stated he and C.H. were on the couch underneath a blanket watching a movie and they both fell asleep. Pelletier denied abusing C.H., and he asserted the incident was C.H.'s dream or C.H. was just out to get him. Further:
>
>> Mr. Pelletier stated . . . he woke up . . . got up to go to the bathroom, went to the bathroom, got a cigarette, came back to the living room to where the couch was located, [C.H.] was gone.
>>
>> . . . .
>
> C.H. testified to the events at issue. Pelletier watched a movie with him, and they sat together on the couch. When C.H. fell asleep on the couch, Pelletier was in another room with his girlfriend, Heather Anderson. C.H. awoke to Pelletier lifting up the blanket and "trying to cuddle" with him. C.H. "just immediately froze" and Pelletier pulled down C.H.'s pants and underwear. After Pelletier sucked on C.H.'s penis, Pelletier stood up and walked into the bathroom. C.H. pulled up his underwear and pants and ran to

the closest neighbor's house—Doug Peiffer's house. C.H. pounded on the door and "I told him the babysitter raped me."

A DNA expert, Kristin Evans, testified the enzyme amylase is found in saliva as well as in minute amounts in other bodily fluids. She analyzed the physical evidence and detected a strong presence of amylase on the inside of the back of C.H.'s underwear. The substance contained a mixture of DNA from two different sources. Assuming C.H. as one source, the remaining and major contributor of genetic material was consistent with the DNA profile of Pelletier. Because this profile was incomplete, Evans did not testify to a "match." However, she testified the likelihood another person would have the same genetic profile discovered on the inside of C.H.'s underwear and consistent with Pelletier's DNA profile was 1 in 470 million. Evans stated: "When it is on the inside of the victim's clothing, then yes, it is probative." A slightly elevated level of amylase was also found on the fly and crotch of C.H.'s jeans, but a profile could not be developed.

Anderson, Pelletier's girlfriend, testified she awoke during the night and saw Pelletier and C.H. sleeping on the couch.

*State v. Pelletier*, No. 11-1827, 2012 WL 6193880, at *1–2 (Iowa Ct. App. Dec. 12, 2012).

In this appeal Pelletier argues "postconviction counsel provided ineffective assistance by failing to amend the pro se application and by not offering any evidence to support some claims of trial and appellate counsel's ineffectiveness." There is a statutory right to the effective assistance of postconviction counsel. *See Dunbar v. State*, 515 N.W.2d 12, 14 (Iowa 1994). To prevail on this claim, Pelletier must establish "that his attorney's performance fell outside a normal range of competency and that the deficient performance so prejudiced him as to give rise to the reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* at 15.

Pelletier's claim of error fails. "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

Pelletier does not identify what amendments should have been made to the application for postconviction relief. Pelletier does not identify what evidence should have been offered at the postconviction-relief hearing in support of "some claims." Pelletier does not identify what claims are "some claims" in need of further evidentiary support. Pelletier does not identify with any specificity the alleged breaches of duty. Pelletier does not identify the prejudice allegedly suffered. Pelletier does not identify the legal authority in support of his unspecified or unidentified claims. Pelletier's claims are waived or not preserved for appellate review. *See* Iowa R. App. Pro. 6.903(1)(g)(3); *In re Detention of West*, No. 11-1545, 2013 WL 988815, at *3 (Iowa Ct. App. Mar. 13, 2013) ("[R]andom mention of an issue, without elaboration of supportive authority, is not sufficient to raise an issue for review.").

To the extent Pelletier's claims are not waived and are preserved for appellate review, Pelletier is not entitled to relief because he has not established prejudice. There was overwhelming evidence of Pelletier's guilt. As explained on direct appeal:

> After our de novo review of the record, we conclude the evidence of guilt is overwhelming. The victim's neighbor and the neighbor's mother both testified the upset victim arrived at their home partially dressed on a cold winter morning stating he had been raped. The DCI criminologist testified to the presence of amylase (saliva) consistent with Pelletier's DNA on the *inside* of the victim's underwear. The victim testified to awaking to Pelletier removing clothing and placing his mouth on the victim's penis. The victim testified he fled when Pelletier went to the bathroom. Pelletier admitted he and the victim slept together on the couch and the victim left abruptly while Pelletier was in the bathroom. The jury was free to reject Pelletier's assertion the victim was "dreaming" or "out to get him." Based on this evidence, we conclude Pelletier cannot establish *Strickland* prejudice, and his ineffective-assistance-of-counsel claim therefore fails.

*Pelletier*, 2012 WL 6193880, at *3 (emphasis in original).

**AFFIRMED.**